# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                                           Criminal Action No. 2:14-cr-10

CINDA LOU CHAPMAN,
           Defendant.

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Cinda Lou Chapman, in person and by counsel, Katy Cimino, appeared before me on June 5, 2014. The Government appeared by Andrew Cogar, its Assistant United States Attorney. The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count One of the Indictment.

The Court proceeded with the Rule 11 proceeding by first placing Defendant under oath.

The Court first inquired whether Defendant was a citizen of the United States. Defendant responded that she was a citizen. The undersigned asked Defendant whether she understood that if she were not a citizen of the United States, by pleading guilty to a felony charge she would be subject to deportation at the conclusion of any sentence; that she would be denied future entry into the United States; and that she would be denied citizenship if she ever applied for it. Defendant stated that she understood.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that it was and counsel for Defendant confirmed the same. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated that the agreement as

summarized by counsel for the Government was correct and complied with her understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that she voluntarily waived her right to have an Article III Judge hear and accept her plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Cinda Lou Chapman, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count One of the Indictment, including the elements the United States would have to prove at trial, charging her with theft of government money, in violation of 18 U.S.C. § 641. The undersigned then reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count One

of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to her competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against her and understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on that charge was imprisonment for a term of not more than ten (10) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to a period of three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. She also understood that her sentence could be increased if she had prior firearm offense, violent felony conviction, or prior drug conviction. She also understood she might be required by the Court to pay the costs of her incarceration and supervised release.

Defendant further understood that she agreed to make restitution, pursuant to 18 U.S.C. § 3663(a)(3), to the Social Security Administration in the amount of $23,584.32, as Title XVI Supplemental Security Income benefits paid to her for herself and for her minor daughter, L.G.R., from July 2010 through December 2012.

The undersigned also reviewed with Defendant her conditional waiver of appellate rights as follows:

Ct.  Did you and your lawyer discuss your right to appeal your conviction and sentence to the Fourth Circuit Court of Appeals by filing a notice of appeal within 14 days of your sentencing?

Def. Yes, she did.

Ct. Did you and your lawyer also discuss your right to collaterally attack or challenge your sentence and how that sentence is being carried out by filing a motion under 28 U.S.C. § 2255?

Def. Yes, sir.

Ct. You understood that to be commonly called a habeas corpus type motion, is that correct?

Def. Yes.

Ct. Under your written plea agreement, in paragraph 13, I'm sorry, not 13, in paragraph numbered 11, do you fully understand that if the District Judge imposes an actual sentence which is below the statutory maximum sentence of 10 years, you give up your right then to appeal that sentence and you also give your right to collaterally attack or challenge the sentence and how it's being carried out?

Def. Yes, sir.

Ct. Do you understand that means that if the Judge gave you 9 years and 6 months of imprisonment, you will have given up your right to directly appeal to the Fourth Circuit and you will have given up your right to collaterally attack or challenge the sentence?

Def. Yes.

Ct. Even though that may be a sentence that is higher than what the Guidelines called for, or something higher than what you might be expecting or wanting as a sentence?

Def. Yes.

Ct. Did you intend to give up those two valuable direct and indirect appeal rights as set forth in paragraph 11 of your written plea agreement?

Def. Yes, sir.

| | |
|---|---|
| Ct. | Did you understand that provision of the plea agreement when you signed it on May the 14th of this year? |
| Def. | Yes, I did. |
| Ct. | Has anything about your understanding of that provision changed since you signed it on May the 14th and today? |
| Def. | No, sir. |

From the foregoing colloquy the undersigned determined that Defendant understood her appellate rights and knowingly gave up those rights pursuant to the condition contained in the written plea bargain agreement.

The undersigned Magistrate Judge further examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated she understood the terms of the written plea agreement and also stated that it contained the whole of her agreement with the Government and no promises or representations were made to her by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, her counsel, and the Government as to the non-binding recommendations and stipulations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count One of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further

order a pre-sentence investigation report be prepared by the probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count One of the Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulations contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulations contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant and her counsel each acknowledged their understanding and Defendant maintained her desire to have her plea of guilty accepted.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not have a right to withdraw her guilty plea. Defendant further stated her attorney showed her how the advisory guideline chart worked but did not promise her any specific sentence at the time of sentencing. Defendant stated that she understood her attorney could not predict or promise her what actual sentence she would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the

federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Thereupon, Defendant, Cinda Lou Chapman, with the consent of her counsel, Katy Cimino, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count One of the Indictment.

The Court would generally hear the testimony of a Government witness at this point in the hearing to support an independent basis in fact for the guilty plea. In this case, the parties agreed that the Government would provide a proffer to provide that independent basis in fact. The Government proffered that as of April 1997, Defendant was entitled to receive Title XVI Supplemental Security Income ("SSI") benefits. Defendant received a monthly payment of $549.00. Defendant married in 2007; however, she failed to notify the Social Security Administration ("SSA") of that marriage. Accordingly, she continued to receive benefits for herself and her minor daughter. Defendant also concealed her husband's assets and wages from the SSA. Those wages and assets would have made Defendant ineligible to continue receiving SSI benefits. Therefore, the SSA continued to directly deposit benefits for Defendant and her daughter to the same checking account at Summit Community Bank in Moorefield, West Virginia, within the Northern District of West Virginia. The total loss to the Government was $23,584.32. After her marriage, Defendant also made false statements to the SSA. For example, in 2011, Defendant stated that she was living with her daughter and her half-brother; she made no mention of her husband. In 2012, Defendant failed to notify the SSA of her husband's income and several bank accounts containing assets jointly held in both her and her husband's names.

Defendant stated she heard, understood, and did not disagree with any of the Government's proffer. The undersigned United States Magistrate Judge concludes the offense charged in Count One of the Indictment is supported by an independent basis in fact concerning each of the essential elements of such offense. That independent basis is provided by the Government's proffer.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count One of the Indictment; Defendant understood the consequences of her plea of guilty, in particular the maximum statutory penalty to which she would be exposed; Defendant understood her waiver of appellate rights explained this date; Defendant made a knowing and voluntary plea of guilty to Count One of the Indictment; and Defendant's plea is independently supported by the Government's proffer, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count One of the Indictment, **FINDS HER GUILTY OF SAID CHARGE,** and recommends she be adjudged guilty on said charge as contained in Count One of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant, through counsel, moved to remove the condition that she be subjected to drug testing from the Order Setting Conditions of Release previously entered in this matter. Counsel for Defendant represented that Defendant has no history of drug use, that this case does not involve the use and distribution of controlled substances, and that all drug tests she had taken since being placed on pretrial release have been negative. The Government had no objection. Accordingly, Defendant's motion to remove drug testing is **GRANTED**, and Defendant is released pursuant to the Order Setting Conditions of Release previously entered in this matter.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: June 9, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE